## Richmond.

## WHITE v. CAMPBELL.

### FEBRUARY 5th, 1885.

1. EQUITY JURISDICTION AND RELIEF—*Parol evidence—Correcting mistakes.*—There can be no question as to the power and duty of courts of equity to reform a written instrument between living parties and for a valuable consideration, on account of a mistake of the draftsman, though proven by parol evidence ; but not where the party seeking to reform the writing is a mere volunteer, and the other party is dead.

2. IDEM—*Case at bar.*—Where C. paid off a judgment against W. for the expressed benefit of M., who was a mere volunteer, and directed the draftsman to draw the assignment for M.'s benefit; and by mistake of the draftsman the assignment was drawn directly and plainly to C., who retained the writing until his death without any complaint·of the mistake ; in litigation between C.'s administrator and M. as to the ownership of said judgment.

HELD :

> A court of equity cannot reform the plainly-written assignment in favor of M., a volunteer, and give effect to C.'s intentions as proved by parol evidence.

Appeal from decree of circuit court of Caroline county, entered March 14th, 1882, in the chancery cause therein pending, wherein W. B. H. Campbell, administrator of J. P. H. Campbell, was complainant, and J. J. White, Walter S. Wright, executor of Ann J. Wright, W. S. Chandler, Jos. A. Chandler, John Washington, A. B. Chandler, Wm. G. Miller, and Emma E., his wife, Ann J. Wigglesworth, and others, were defendants.

Opinion states the case.

*Washington & Chandler* and *Sands, Leake & Carter*, for the appellant.

*Geo. P. Haw*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The bill is filed by the administrator of Joseph P. H. Campbell to subject the lands of James J. White, the husband of appellant, to the payment of certain debts alleged to be due to the estate of his intestate. The said James J. White, being indebted to sundry persons, and desirous to secure the payment of his said indebtedness, did, on the 16th of November, 1874, convey in trust to John Washington and Joseph P. H. Campbell a certain farm of 630 acres of land in Caroline county, Virginia, to secure the debts therein enumerated; among which was a debt of $1,500 due to Polly M. Marshall, with interest at eight per centum per annum from October 16th, 1874—subject to the payment of two years interest endorsed thereon.

After the execution and recordation of this aforesaid deed of trust, to-wit: on the 2nd day of January 1875, one W. G. Miller and E. H. Miller his wife, who was E. H. Wigglesworth, and Ann W. Wigglesworth obtained, in the circuit court of Spotsylvania county, a decree against H. B. White and the said James J. White, in a chancery suit therein depending, under the style of *Wigglesworth* v. *Wigglesworth*, for the sum of $815.67 with interest on $671.07 from the 4th February 1869, and on $144.60 from April 1st 1870 till paid, and their costs; and also for the payment to Ann W. Wigglesworth of a like sum, with like interest and costs, to be paid by the same parties.

Shortly after the rendition of this decree, the aforesaid William G. Miller, who had married Miss E. H. Wigglesworth, acting for himself and wife, and for his wife's sister, Miss Ann W. Wigglesworth, they being the owners of the said decree,

wrote a letter to the said James J. White offering to accept fifty per cent., or one half, of the whole sum decreed, and to release the said James J. White, upon the payment of the said fifty per centum, from all responsibility or liability under the said decree. James J. White, who was only surety for this debt of H. B. White as guardian for the Wigglesworths, though fully appreciating the friendly motives expressed by this offer, as personal to him and his family, was wholly unable to accept or avail of the offer, as he had no money, and no property except what was already embraced in the deed of trust to secure his own creditors. After the receipt of this letter from Miller, J. P. H. Campbell visited James J. White's house, as he was in the habit of doing, upon terms of the closest intimacy and affection for the said James J. White, and his sister, Mrs. White, who was, and had been for years, a helpless and hopeless invalid, confined to her chamber and unable to see anyone but her family and immediate friends, and expressed his anxiety about the Wigglesworth decree, and asked James J. White what he had done about it. White told him that he had done nothing; and was wholly unable to do anything; and intended to do nothing; and handed to him the letter from Wm. G. Miller. Campbell read the letter, and, remarking, this matter must be settled and ended; a sale here will kill Margaret, (meaning his sister and White's wife) he put Miller's letter in his pocket. Early the next morning he left, saying he was going to see John Washington. He did confer with John Washington, who was a lawyer, and his friend and adviser, and he paid the decree to Wm. G. Miller, by giving his negotiable note, with John Washington as his endorser, at ninety days from the date of the decree for fifty per cent. of the decree. And this, William G. Miller, acting for himself and wife and sister-in-law, Ann W. Wigglesworth, accepted in full payment and discharge of the decree. William G. Miller obtained from H. B. White, the principal debtor, his notes endorsed by John White, his son, for the whole amount of the debt, and passed them over to

Campbell, who took them in full satisfaction of the debt evidenced by the Wigglesworth decree, refusing the offer of James J. White to endorse the notes so as to make himself responsible for their payment—saying that he would take the notes in satisfaction of the Miller debt, which he had paid, and make what he could out of the principal debtor, H. B. White. James J. White did not, at any time, request Campbell to pay the debt, or any part thereof; nor did he promise Campbell, at any time, to pay him the same, or any part thereof:—being wholly unable to meet such a promise.

After the execution of the deed of trust of November 16th 1874, by James J. White to secure his own creditors, and among them a debt due to Polly M. Marshall for $1,500 bearing eight per cent. interest, Polly M. Marshall brought suit on the bond, evidencing the said debt, and obtained a judgment, and sued out execution, which was in the sheriff's hands.

Joseph P. H. Campbell, who was a bachelor without family, advanced in years and possessed of considerable means, actuated by the same tender solicitude for the peace and comfort of his invalid sister, Mrs. White, and his brother-in-law, James J. White, whose home and only shelter was threatened, by the execution of this judgment, again came forward and expressed his wish and purpose to pay off and satisfy the debt due to Mrs. Polly M. Marshall, not only for the momentary or temporary relief, but for the ultimate use and benefit of his sister Mrs. White. He consulted Mr. E. C. Moncure, the attorney for Mrs. Marshall who had obtained the judgment, as to the mode of effecting this object and declared intent. Campbell did pay off and satisfy the debt to Mrs. Marshall (except about $220 of it, which was paid by James J. White) and told Mr. Moncure to draw the assignment of the judgment, after it should be finally and fully paid off, in the agreed instalments, from time to time, for the benefit of his sister, Mrs. White. Moncure, however, who was Mrs. Marshall's attorney, by some aberration of mind or memory, drew the assignment simply to J. P. H. Campbell,

and not, as Campbell had instructed him to do, for the benefit of his sister, Mrs. White. Soon after this Campbell died, in 1876, without a will; and his administrator filed the bill in this cause seeking to subject the land of James J. White to the payment of the Wigglesworth-Miller decree, and the Polly M. Marshall assigned judgment, as belonging in law and equity to the estate of his intestate, J. P. H. Campbell.

The answers of the defendants, Margaret A. White, James J. White, Joseph A. Chandler, John Washington, and Washington and Chandler, are filed, and they deny the material allegations of the bill; the answers of James J. White and of Margaret A. White emphatically denying and resisting all liability, either legal or equitable, for the Wigglesworth-Miller decree, or for the Marshall judgment, to the estate of J. P. H. Campbell; and alleging a mistaken and defective execution of the assignment, by the draftsman thereof, contrary to the intent and positive instructions of J. P. H. Campbell; and praying the court to reform the defective assignment, and to decree that the Polly Marshall debt was intended for her, and is her property.

An order of reference to a master commissioner of the court was entered directing, among other inquiries, whether or not the said J. P. H. Campbell paid off or discharged the decree entered against H. B. White and James J. White in the chancery suit of *Wigglesworth* v. *Wigglesworth*, dated January 2d, 1875, or whether he became entitled thereto as against James J. White, either as purchaser thereof or by right of substitution thereto? Whether or not the said W. H. B. Campbell, as administrator of J. P. H. Campbell, is entitled to the judgment of Polly M. Marshall against James J. White, Wm. S. Chandler, J. A. Chandler and John Washington, as against the said James J. White, or whether or not the same belongs to any other person, or has been paid and satisfied, or if anything is due thereunder, how much?

Responsive to this reference, the master commissioner re-

turned his report, and with it the voluminous evidence upon which it is based, that J. P. H. Campbell paid off and discharged the decree entered against H. B. White and James J. White in the chancery suit of *Wigglesworth* v. *Wigglesworth* of January 2nd 1875. That he paid it off, voluntarily, for the benefit of his sister, Mrs. White. That J. P. H. Campbell paid off the Polly M. Marshall judgment and took an assignment of it, intending it for the benefit of his sister, Mrs. White;—that he directed the attorney, Moncure, to assign it for the benefit of his sister, Mrs. White; and that the said assignment should have been drawn accordingly for the benefit of Mrs. White.

To this report the plaintiff excepted.

The circuit court by its decree of March 14th, 1882, decided that the plaintiff is not entitled to claim or recover of the defendant, James J. White, anything whatever upon the decree entered by the circuit court of the town of Fredericksburg in the cause of *Wigglesworth* v. *Wigglesworth*, and referred to and claimed by him in his original bill filed in this cause; and decided that the plaintiff W. H. B. Campbell, administrator of J. P. H. Campbell, is entitled to recover of the said defendant James J. White, the sum of $1,723.70 (and interest on $1,310.45, part thereof, from September 1st, 1880, till paid, at the rate of eight per centum per annum), as assignee of the judgment of Polly M. Marshall against James J. White and others. And in default of the payment of this sum of $1,723.70, with the interest thereon, by James J. White to the plaintiff, in four months from the date of the said decree, the court decreed the land of the said James J. White embraced in the deed of trust to be sold, and the proceeds applied in conformity to the provisions of the deed of trust, and in satisfaction of the decree.

From this decree Margaret A. White, a married woman, and one of the defendants, appeals to this court; and, in her petition, assigns that the circuit court of Caroline erred in decreeing that W. H. B. Campbell, as administrator of J. P. H. Campbell, is entitled to recover of the defendant, James J.

White, $1,723.70, and interest on $1,310.45, at eight per cent., from September 1st 1880, as assignee of the Polly M. Marshall judgment against James J. White and others; but that the same should have been decreed to be paid to Joseph A. Chandler, as trustee for the benefit of petitioner, as prayed for by her, in her answer in this cause.

The counsel for appellee, in his argument, complains of the decree, and contends that the circuit court erred in overruling the exception to the master commissioner's report, and in deciding that the estate of J. P. H. Campbell is not entitled to claim or recover of the defendant, James J. White, anything whatever upon the decree entered in the cause of *Wigglesworth* v. *Wigglesworth;* but we think there is no error in this. The evidence is overwhelming, clear, and cumulative in the record, that J. P. H. Campbell actuated by the tenderest affection for both James J. White and his invalid sister, Mrs. White, and a volunteer, alert sympathy and solicitude as to the probable effect of the impending decree in the Wigglesworth suit upon his sister's peace of mind and even her life itself, paid off and satisfied and discharged that decree, of his own motion and without the knowledge or request of James J. White, whose subsequent proffer to endorse the notes which he had taken for the decree in the settlement with Miller, so as to make him responsible for them, Campbell positively declined. And when inquired of, subsequently, if he did take or intended to take an assignment of the decree, replied that he had not, and would not; that it was not worth the trouble;—that the deed of trust upon White's land would more than cover it any way; that he had paid off the decree to give ease of mind to his sister; and that he did not consider James J. White in any way liable for it; and never intended that any demand. should be made on said White for the same, or any part thereof.

The ruling of the circuit court as to this Wigglesworth decree is plainly right, and must be affirmed.

The error assigned by the appellant, Margaret A. White, the

wife of James J. White, is, that the circuit court erred in sustaining the exception of the plaintiff to the report of the commissioner as to the Polly M. Marshall judgment, and in decreeing that W. H. B. Campbell, administrator of J. P. H. Campbell, is entitled to claim and to recover of the defendant, James J. White, the amount of the said judgment by virtue of the assignment of the same from Polly M. Marshall.

The appellant is not the judgment debtor, James J. White, but Mrs. Margaret A. White, his wife, who, being a defendant, filed her answer to the bill filed by the administrator of J. P. H. Campbell, in which she alleged that she is the only sister of J. P. H. Campbell, deceased, and their attachment was mutual and strong; that she has been in delicate health and confined to her chamber for many years; that J. P. H. Campbell always evinced for her the tenderest affection, and that this manifestation has been more strongly marked since her low state of health, and his solicitude for her health and happiness and comfort still more aroused by the pecuniary troubles of her husband; that he repeatedly told her that he had no family and no one beside her whom he cared particularly to provide for, and he would provide for her comfort and support. That he told her he intended to pay off the Marshall judgment for her; and, after it had been paid off in full, he told her that he had the said judgment, and that it was for her use and benefit, and she would have a support. And she charged, in her said answer, that the assignment to her brother, and not to him for her benefit, was a mistake of the draftsman who drew the assignment, and was a defective execution of the express intent and instruction of her brother to Moncure, the lawyer who drew the assignment, to draw it for her use and benefit; that her brother did not know of this defect, and did not intend so to take it; and that he lived and died in the confidence and satisfaction with which he told her he had gotten it, and was holding it for her benefit. She insisted that the Marshall debt was intended for her, and is her property; and she prays the court

so to decree—and that the deed of trust executed by her husband, James J. White, to secure the payment of this debt be not enforced; but that it be held for her benefit under the deed of trust, as her brother, J. P. H. Campbell, who was one of the trustees named in the deed of trust, believed and repeatedly declared he was holding it for her use and benefit.

The statement of this new affirmative matter in the answer of Mrs. White, is fully and explicitly corroborated by the clear, concurrent and conclusive testimony of numerous unimpeached and unimpeachable witnesses.

The execution to enforce the payment of the Marshall judgment was in the hands of the sheriff; and James J. White, the judgment debtor, and his wife, Margaret A. White, the sister of J. P. H. Campbell, were greatly distressed and afflicted at the impending loss of their home and their all. J. P. H. Campbell, prompted by the same affection, and with the same design, as in the Wigglesworth-Miller decree, went to Moncure, the attorney for Mrs. Marshall, and stated his wish to pay the judgment off, and to arrange it for the benefit of his sister, Mrs. White—and expressly consulted Moncure as to how this his anxious, express purpose could best be effected. Moncure said "take an assignment of it." The debt was not then paid—it was paid off in instalments; but J. P. H. Campbell instructed Moncure when the debt should be wholly paid off to assign the judgment for the benefit of Mrs. White; telling him then, that his whole scope and design was to give *peace* of mind to his sister: as he did tell sundry other witnesses, in the record, that he had paid the debt off as a gift to his sister—whom he feared would be killed by a sale of the land and the house over her head.

John Washington, like Moncure, a lawyer and a neighbor and confidential friend of J. P. H. Campbell, says that he had frequent conversations with said Campbell about the negotiations and settlement of the Marshall debt, and that Campbell told him that his action in the matter was for the benefit of his

sister, and that he had paid the judgment off as a gift to her.
H. H. George, who held, and had long held, the closest busi-
ness relations with J. P. H. Campbell, testifies, that the last
time Campbell was at his house, a few days only before his
death, he told his wife, in his presence, that he had bought the
Marshall judgment for the benefit of his sister; and that this
he had told him before; and that Campbell further told him
that when he purchased the Marshall judgment, he had directed
Moncure to assign it for the benefit of his sister; and that
Campbell had repeatedly told him that this was his object in
buying it, and that he had directed it to be so assigned—and
that Campbell believed that it had been so assigned by Mon-
cure, in whom, both as a lawyer and a man, he had full confi-
dence.

All this direct and positive testimony, and much more, in
the record, as to the intent, instructions and belief of J. P. H.
Campbell that he had bought this judgment and taken the as-
signment of it for the benefit of his sister, Mrs. White, is wholly
uncontradicted by anything in the record; and is opposed only
by the legal assignment of the judgment to Campbell as drawn
by the attorney for Mrs. Marshall.

But, this clear and unambiguous written instrument is, we
are constrained to think, a fatal and insuperable obstacle to
prevent a court of equity from interposing its mere reformatory
power over contracts to make effectual in Mrs. White, the ap-
pellant's behalf, the oft declared beneficent intent of her
brother, the intestate, who took the assignment of the judg-
ment which he had paid off, and held it to the hour and event
of his death, without having ever complained of the alleged
mistake of the draftsman, or saying or doing anything to rec-
tify it.

There can be no question of the power and duty of a court
of equity to correct and reform a contract or written instru-
ment, for the proved or admitted mistake of the *draftsman*, be-
tween living parties, and for a valuable consideration; and

this, even though ·the mistake has to be made to appear by *parol* testimony; yet, in this case, Mrs. White is a volunteer; and J. P. H. Campbell, who paid off and took the assignment of the judgment for a valuable consideration, *is dead;* and his personal representative is bound to· assert his legal right,· as he could himself, undoubtedly do, were he living, against this claim or pretension of Mrs. White.

We have, at great length, and intentionally, in the statement or narrative of this opinion, demonstrated the undeniable truth of the statement, made by the appellant in her answer filed in this cause, as to the intent and manifested purpose of J. P. H. Campbell to befriend and benefit his sister, Mrs. White, in this payment of the Marshall judgment, as he had done in the payment of the Wigglesworth-Miller decree; but as he took a regular, legal, written assignment of the Marshall judgment, and lived and died without executing or effectuating his kindly intent to make this assigned property of his over to his sister— the court of equity cannot virtually make a will for him; and thus establish a most dangerous and impolitic precedent for the dealing with the estate of an intestate.

We find no error in the decree of the circuit court of Caroline complained of, and the same must be affirmed.

DECREE AFFIRMED.